**Danny PEDREGON, Appellant,**

v.

**Cynthia SANCHEZ, Appellee.**

No. 08–05–00237–CV.

Court of Appeals of Texas, El Paso.

March 22, 2007.

Bobbie Marie Guerra–Cavazos, Rincon Mounts PC, El Paso, for Appellant.

Heather A. Ronconi, El Paso, for Appellee.

Before CHEW, C.J., McCLURE, and BARAJAS, C.J. (Ret.).

## *OPINION*

ANN CRAWFORD McCLURE, Justice.

Danny Pedregon appeals a money judgment for child support arrearages. At issue is whether Danny was entitled to an offset for funds paid to support his son upon Cynthia's relinquishment of possession. For the following reasons, we affirm.

### FACTUAL SUMMARY

Danny and Cynthia Pedregon were divorced in 1992. They were named joint managing conservators of their two children, Anthony and Alyssa, with Cynthia having the right of primary possession. Initially, Danny was ordered to pay child support in the amount of $500 per month, but this was increased to $615 in 1998.

Anthony ran away from home in October 2000 and by June 2001, he was living

in a runaway shelter. In an effort to get him home, Cynthia signed an agreement by which she relinquished possession of her son. Before allowing Anthony to move in with him, Danny insisted that he go back to school and work for Danny's company. Danny agreed that when Anthony turned seventeen, he would be allowed to live in one of Danny's rental properties. A few days later, Anthony moved in with his father. In July 2001, Danny reduced the child support payments from $615 to $477 because Anthony was living with him. He did not seek a formal court order of modification and the agreement Cynthia signed did not mention child support.

By October 2001, Anthony had moved into a rental property. He turned eighteen in August 2002, and he continued to reside in the rent house until he was nineteen.

On January 23, 2004, Cynthia filed another motion to increase the child support payment for Alyssa. She also filed a motion for enforcement and clarification, alleging Danny failed to pay the full amount of child support owed between June 1, 2001 and May 1, 2002. Danny did not file an answer, and on July 30, 2004, a default judgment was entered, increasing the child support payments to $1,200. Cynthia amended her motion for enforcement to update the arrearages. In response, Danny sought credit for the support he was obligated to pay during the time Anthony resided with him.

The trial court found Danny had an accrued arrearage of $6,649.62 for the period from April 1, 2000 through October 1, 2004 and owed $1,166.89 for the months of October 2004 through March 2005. The court ordered him to pay a total of $7,730.62, bearing interest at six percent per annum. Cynthia was also awarded attorney's fees and costs in the amount of $2,771.

## STANDARDS OF REVIEW

This appeal proceeds without benefit of findings of fact or conclusions of law. Consequently, the judgment will be affirmed if it can be upheld on any legal theory that is supported by the evidence. *Long v. Long*, 144 S.W.3d 64, 67 (Tex. App.—El Paso 2004, no pet.). We must assume that the trial court made all necessary fact findings to support its judgment. *Id.* When a reporter's record is available, an appellant may challenge the legal and factual sufficiency of these implied findings. *Agraz v. Carnley*, 143 S.W.3d 547, 554 (Tex.App.—Dallas 2004, no pet.). Therefore, we will address Danny's legal and factual sufficiency challenges to the trial court's implied findings of fact.

### *Legal Sufficiency*

A legal sufficiency point challenges the legal sufficiency of the evidence to support a particular fact finding. *Tate v. Tate*, 55 S.W.3d 1, 4 (Tex.App.—El Paso 2000, no pet). Where, as here, the party having the burden of proof suffers an unfavorable finding, the proper complaint is that the fact was established as "a matter of law." *Duran v. Garcia*, 224 S.W.3d 309, 312 (Tex.App.—El Paso 2005, no pet.). In other words, an appellant must demonstrate the evidence conclusively established all vital facts in support of the issue. *Id.*, citing *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989); *In re Estate of Livingston*, 999 S.W.2d 874, 879 (Tex. App.—El Paso 1999, no pet.). A party attempting to overcome an adverse fact finding as a matter of law must overcome two hurdles. *Id.*, citing *Sterner*, 767 S.W.2d at 690; *In re Estate of Livingston*, 999 S.W.2d at 879. First, while ignoring all evidence we must examine the record for evidence that supports the finding. *Id.* Second, if there is no evidence to support

the finding, then the entire record must be examined to see if the contrary position is established as a matter of law. *Id.* A fact will be established as a "matter of law" only if the contrary position is conclusively established. *Id.*

### Factual Sufficiency

Where the party with the burden of proof is challenging the factual sufficiency of the findings, the appropriate complaint is that the adverse findings are "against the great weight and preponderance of the evidence." *Tate*, 55 S.W.3d at 5. In reviewing a factual sufficiency issue, we must consider and weigh all of the evidence in order to determine if the adverse finding was so against the great weight and preponderance of the evidence that it was clearly wrong and manifestly unjust. *Dow Chemical Co. v. Francis*, 46 S.W.3d 237, 242 (Tex.2001); *Marrs and Smith Partnership v. D.K. Boyd Oil and Gas Co., Inc.*, 223 S.W.3d 1, 13 (Tex.App.—El Paso 2005, pet.denied), *citing Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). We will not interfere with the fact finder's resolution of conflicts or determine the weight or credibility of the witnesses testimony because a fact finder's determination of conflicting evidence is generally regarded as conclusive. *Tate*, 55 S.W.3d at 5.

### Abuse of Discretion

■ Most of the appealable issues in family law are evaluated under an abuse of discretion standard, including the issue of child support. *Duran*, 224 S.W.3d at 312. The test for an abuse of discretion is whether the trial court acted without reference to any guiding rules and principles. *Id., citing Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986), *citing Craddock v. Sunshine Bus Lines*, 134 Tex. 388, 133

S.W.2d 124, 126 (Tex.Comm.App.—1939, opinion adopted). Stated differently, the appropriate inquiry is whether the ruling was arbitrary or unreasonable. *Duran*, 224 S.W.3d at 312. The mere fact that a trial court would decide a matter within its discretion in a different way than an appellate judge does not demonstrate the trial court abused its discretion. *Gaxiola v. Garcia*, 169 S.W.3d 426, 429 (Tex.App.—El Paso 2005, no pet.).

■ In reviewing whether the trial court abused its discretion, sufficiency complaints are not independent grounds for error, but are factors to be assessed in determining if the trial court abused its discretion. *Agraz*, 143 S.W.3d at 554. Because all three standards apply in reviewing a child support order, we must engage in a two prong analysis: (1) Did the trial court have sufficient information upon which to exercise its discretion, and (2) did the trial court err in its application of discretion. *Duran*, 224 S.W.3d at 313, *citing Lindsey v. Lindsey*, 965 S.W.2d 589, 592 (Tex.App.—El Paso 1998, no pet.). In answering the first question, we apply the traditional sufficiency review. If we determine there was legally and factually sufficient evidence, then we must decide whether the trial court reached a reasonable decision. *See Duran*, 224 S.W.3d at 313.

### STATUTORY ENTITLEMENT TO OFFSET

A respondent to a motion for enforcement of child support has a statutory affirmative defense and may request either a reimbursement for support provided or an offset against the claim of the obligee. Tex.Fam.Code Ann. § 157.008(d)(Vernon 2002). To assert the affirmative defense, the obligor must:

(a) [plead] as an affirmative defense in whole or in part to a motion for enforce-

ment of child support that the obligee voluntarily relinquished to the obligor actual possession and control of a child. (b) The voluntary relinquishment must have been for a time period in excess of any court-ordered periods of possession of and access to the child and actual support must have been supplied by the obligor.

■ Tex.Fam.Code Ann. § 157.008(a) & (b). To successfully establish the affirmative defense, an obligor must prove the obligee voluntarily relinquished actual possession and control of the child *and* prove payment of actual support. *Gonzalez v. Tippit*, 167 S.W.3d 536, 543 (Tex.App.—Austin 2005, no pet.); *Curtis v. Curtis*, 11 S.W.3d 466, 472 (Tex.App.—Tyler 2000, no pet.). Failure to prove both elements results in a failure to establish the affirmative defense. *Gonzalez*, 167 S.W.3d at 543. Although Danny challenges the sufficiency of the evidence to support each element, we need address only one.

### DID DANNY PROVIDE ACTUAL SUPPORT?

■ Danny contends there is no case law requiring that an obligor provide an itemized listing of expenses incurred to establish proof of actual support. He directs our attention to *Rinehold v. Rinehold*, 790 S.W.2d 404, 406 (Tex.App.—Houston [14th Dist.] 1990), *disapproved in Bruni v. Bruni*, 924 S.W.2d 366 (Tex. 1996); and *In re A.M.*, 101 S.W.3d 480, 484 (Tex.App.—Corpus Christi 2002). Since the filing of his brief on the merits, the Supreme Court has reversed *In re A.M. See In re A.M.*, 192 S.W.3d 570 (Tex.2006). It is the most recent pronouncement of the evidence necessary to establish the affirmative defense.

■ Under Section 157.008, an obligor who by agreement has possessed the child for periods in excess of court ordered visitation and who has provided actual support for the child during that period, may request reimbursement for that support as a counterclaim or offset against the claim of the obligee. The court of appeals found that the statute provides both an offset and an affirmative right to reimbursement. *In re A.M.*, 192 S.W.3d at 571. The Supreme Court disagreed.

Timothy Mullen was ordered to pay $450 in child support for his two children in the 1982 decree. In 1985, he filed a motion to modify. Between December 15, 1985 and June 18, 1988, the mother relinquished possession of both children to him. The day before the children returned to their mother, the trial court signed an agreed temporary order reducing support to $350. When the motion to modify was dismissed for want of prosecution, the temporary orders ceased and support reverted to $450. The Attorney General eventually sued Mullen in 1998 to reduce the unpaid child support to judgment. The trial court found that Mullen owed $79,625 and had paid $44,175, leaving a balance of $35,450. *Id.* at 573. The court further found that Mullen was entitled to an offset of $26,100 and reimbursement of $15,197. *Id.* Although the findings indicated a net amount due Mullen, the trial court affirmed the judgment of the Title IV–D master which entered judgment against Mullen for $2,331. *Id.* The trial court believed that the master had the discretion to disallow all offsets and credits as well as the discretion to assess no interest. *Id.*

The court of appeals reversed, holding that after allowing for full offsets and reimbursements, Mullen should recover judgment for $5,846.86. *Id.* In short, the court allowed both a credit and an affirmative reimbursement for each month of excess possession. Mullen argued that the statute actually operates to shift the court ordered support obligation from the obli-

gor to the obligee during voluntary periods of excess possession.

The Supreme Court concluded that depending on the circumstances, an obligor may be entitled to an offset or to reimbursement, but not to both as to any particular periodic payment. *Id.* at 574. Whether he is entitled to an offset or reimbursement will depend on whether the parent continued to pay all of the support obligation during all or part of his excess possession. *Id.* If support was paid, the obligor must seek reimbursement. If it was not, the obligor must seek an offset. *Id.*

The next issue concerned the evidence necessary to establish the affirmative defense. The Attorney General contended that Mullen could only reduce his obligation by proof of specific expenditures made for the children during excess possession and that he had to itemize his expenses to obtain credit. The majority noted that Mullen solely supported the children during the relevant time periods. *Id.* at 575. Their mother testified that she provided no support, and there was no evidence that anyone else did either. *Id.* at 575–76. The court then concluded that the court of appeals could reasonably presume that Mullen was entitled to equate his monthly child support obligation to the actual support he provided for each child. *Id.* at 576. "On this record, nothing more was required." *Id.*

Justice Johnson dissented solely on this evidentiary issue. Although the Family Code does not prescribe the quantity of proof an obligor must provide, it plainly provides that actual support must be proved by a preponderance of the evidence. *Id.* at 576 (Johnson, J., concurring). Thus, the burden was on the obligor to produce evidence to support his affirmative defense. *Id.* While an inference may be drawn that Mullen provided some level of actual support, Justice Johnson did not agree that this inference of "some support" allows a second inference—labeled a "presumption"—that Mullen provided actual support in the specific amount of his monthly support obligation. *Id.*

We turn now to the evidence presented below, which was conflicting. Danny allowed Anthony to live in a rental property. The note on the property was $800, but Danny didn't require Anthony to pay rent. The property had previously been rented for $350 per month. It was vacant for more than a year and by the time of trial, it was rented for $600 per month. Danny testified that he bought furniture, appliances, and utensils, and that he paid all of the utilities except the telephone. When asked, he could not remember how much he paid each month for the utilities. Danny's current wife testified that they gave Anthony some used furniture they already had. According to Danny, Anthony paid for his own groceries. Cynthia testified that she paid for his groceries "pretty much" every month and she paid some of his gas bills. Cynthia also mentioned that Anthony's grandparents helped support him. Danny did not deny or refute this testimony.

The record is devoid of any receipts or estimates indicating the amount of support Danny provided. The only item Danny quantified is the $800 note on the house where his son was living. We are not convinced that the $800 note is evidence of actual support because the note payment was an expense Danny paid regardless of whether his son was living in the house. Moreover, there is evidence in the record that the property was rented for considerably less.

■ We should not be heard to say that an obligor must specifically account for

every expense. But an obligor must provide *some* evidence of the *amount* of actual support paid when the evidence establishes that the obligor did not solely support the child. This would enable the trial court to determine the amount of a proper offset.

Because Danny did not present any evidence as to the amount of support he actually provided, the trial court did not err in denying an offset. And because the evidence was conflicting, Danny's entitlement to an offset was not established as a matter of law, nor was the trial court's ruling against the great weight and preponderance of the evidence. We find no abuse of discretion. Since an obligor must establish proof of both actual support and voluntary relinquishment to be entitled to an offset, we need not address whether Cynthia voluntarily relinquished possession. *Gonzalez,* 167 S.W.3d at 543. We overrule Issues One, Two and Three, and affirm the judgment of the trial court.

BARAJAS, C.J. (Ret.), sitting by assignment, not participating.