# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

NO. 03-07-00164-CV

---

**In the interest of A. F. N.**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT**
**NO. D-1-FM-90-488,147, HONORABLE WILLIAM E. BENDER, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant Gary Neal appeals an order of enforcement for child support arrearage brought by appellee the Office of the Attorney General ("OAG") on behalf of appellee Lyn L. Upton for the support of A.F.N., a child. The OAG sought approximately $82,000 in arrearage, and the trial court granted a judgment for $41,000. In a single issue, Neal contends the trial court erred by failing to offset the child support arrearage completely because Upton voluntarily relinquished actual possession and control of A.F.N. to Neal for approximately eight years. *See* Tex. Fam. Code Ann. § 157.008 (West 2002). For the reasons that follow, we overrule Neal's issue and affirm the trial court's judgment.

## BACKGROUND

Neal and Upton were divorced in 1990. Upton was appointed sole managing conservator of their child, A.F.N., Neal was appointed possessory conservator, and Neal was ordered to make monthly child support payments to Upton of $377 until A.F.N. turned eighteen. In March

2005, the OAG filed a motion for enforcement seeking a money judgment for child support arrearage of approximately $82,000.[1] Neal answered, pleading an affirmative defense that he was entitled to offset or reimbursement against the arrearage.[2] His defense was that he should not have to pay the arrearage because he took care of A.F.N. for periods of time in excess of his court-ordered periods of possession. *See id.*

At a bench trial in December 2006 on the motion for enforcement, Upton, Neal, and A.F.N. were among the witnesses to testify, and their testimony directly conflicted. Although Neal did not dispute the amount of accrued court-ordered child support, Neal testified that A.F.N. lived with him from the time A.F.N. was in first grade through the end of A.F.N.'s eighth grade school year. Upton, in contrast, testified that A.F.N. lived with her and not with Neal during those years except for brief periods of time. A.F.N. testified that from the time he was nine years of age until high school, he rotated between his parents every three days and that he lived with his mother in high school. The parties also testified inconsistently as to the amount of support that Neal provided A.F.N. during the alleged periods of time that Neal was taking care of A.F.N.

---

[1] The record shows that Neal made child support payments from September 1991 until May 1993, from February 1994 until May 1995, and after 2004. He testified that he resumed payments because A.F.N. stopped living with him after his eighth grade school year and began living with Upton. Neal testified that he was unemployed from 1993 through the time of trial and that his girlfriend supported him.

[2] Neal did not seek reimbursement at trial and does not claim entitlement to reimbursement on appeal.

At the conclusion of the testimony, the trial court found that Neal was entitled to an offset of approximately half of the accrued child support that the OAG sought in the enforcement action and granted a $41,000 arrearage judgment against Neal.[3] This appeal followed.

**ANALYSIS**

In one issue, Neal contends that the trial court erred in not "allowing a complete offset of his child support arrearage where the evidence showed that during the accrual of the arrearage [Neal] had possession of the child in excess of court-ordered visitation periods." He seeks a partial remand for the trial court to determine whether he should have to pay the $41,000 judgment, "taking into account the evidence of [his] possession of the child and [his] earning capacity."[4] Neal in effect attacks the legal and factual sufficiency of the evidence to support the trial court's judgment.

In determining whether a finding is supported by legally sufficient evidence, we view the evidence in the light most favorable to the finding, "crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). We indulge every reasonable inference that would support the finding. *Id*. at 822. In reviewing the factual sufficiency of the evidence, we consider and weigh all the evidence presented at trial, including any evidence contrary to the judgment. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989); *Cain v. Bain*, 709 S.W.2d 175, 176

---

[3] The trial court also ordered Neal to pay $150 in attorney's fees to the OAG, and held Neal in contempt for failure to pay child support. Neal challenges only the arrearage judgment on appeal.

[4] Neal did not plead that he was entitled to an offset because of his earning capacity, and the statute does not include earning capacity as a ground for offset. *See* Tex. Fam. Code Ann. § 157.008 (West 2002). Earning capacity is relevant on the issues of contempt and violation of community service, but Neal does not challenge the contempt portion of the judgment. *See id.* § 157.008(c).

(Tex. 1986). We set aside a finding for factual insufficiency if it is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain*, 709 S.W.2d at 176.

We review arrearage judgments for child support under an abuse of discretion standard. *See Pedregon v. Sanchez*, 234 S.W.3d 90, 93 (Tex. App.—El Paso 2007, no pet.); *Gonzalez v. Tippit*, 167 S.W.3d 536, 544 (Tex. App.—Austin 2005, no pet.) ("An order affecting child support, however, is not easily overturned; the complaining party must show a clear abuse of discretion.") (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990)). A trial court abuses its discretion when it acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

When, as here, the sufficiency of the evidence and abuse of discretion standards of review both apply, we employ an hybrid analysis. *See Tippit*, 167 S.W.3d at 544 (citing *In re Estate of King*, 244 S.W.2d 660, 660 (Tex. 1951)). We engage in a two-pronged inquiry:

> (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion by making a decision that was arbitrary or unreasonable based on the evidence elicited.

*Id.* The first prong incorporates traditional sufficiency review. *Id*. Because Neal did not request findings of fact and conclusions of law, we must affirm the trial court's judgment if it can be upheld on any legal theory supported by the evidence. *See Pedregon*, 234 S.W.3d at 92.

Section 157.008 of the family code provides the required elements that an obligor must establish in order to be entitled to an offset in an enforcement action for child support arrearage:

4

(a) An obligor may plead as an affirmative defense in whole or in part to a motion for enforcement of child support that the obligee voluntarily relinquished to the obligor actual possession and control of a child.

(b) The voluntary relinquishment must have been for a time period in excess of any court-ordered periods of possession of and access to the child and actual support must have been supplied by the obligor.

* * *

(d) An obligor who has provided actual support to the child during a time subject to an affirmative defense under this section may request reimbursement for that support as a counterclaim or offset against the claim of the obligee.

Tex. Fam. Code Ann. § 157.008; *see also In the Interest of A.M.*, 192 S.W.3d 570, 574 (Tex. 2006). The burden was on Neal, as the obligor, to prove the duration of excess periods of possession and that he provided actual support to A.F.N. during those periods to be entitled to an offset. *See* Tex. Fam. Code Ann. § 157.006 (West 2002) (burden of proof on respondent to prove affirmative defense to motion for enforcement).

At trial, the parties disputed the length of time that Neal had possession of A.F.N. and the amount of support that Neal provided to A.F.N. during periods of time when he had possession.[5] Neal testified that A.F.N. lived with him for approximately eight years—from the time A.F.N. was

---

[5] The supreme court has addressed the evidence that is required to establish the actual support element. *See In the Interest of A.M.*, 192 S.W.3d 570, 574 (Tex. 2006). In that case, it was undisputed that the obligor solely supported his children during his period of excess possession. *Id.* at 575. The supreme court held that the court of appeals "could reasonably presume, as it did, that during the period of excess possession [the obligor] was entitled to equate his monthly child support obligation to the actual support he provided each child." *Id.* at 576. In contrast, the parties dispute when and how much support Neal provided to A.F.N. *See Pedregon v. Sanchez*, 234 S.W.3d 90, 96 (Tex. App.—El Paso 2007, no pet.) ("[O]bligor must provide *some* evidence of the *amount* of actual support paid when the evidence establishes that the obligor did not solely support the child. This would enable the trial court to determine the amount of a proper offset.").

in the first grade through the end of A.F.N.'s eighth grade school year[6]—and that he had an

agreement with Upton that he was not obligated to pay child support during that time period.[7] He

testified that he and A.F.N. lived with his girlfriend and her daughter during the time that he was

taking care of A.F.N. and that he provided A.F.N. with money for his school lunches and fed him.[8]

Upton, in contrast, testified that there was never a time when A.F.N. stayed with Neal

Monday through Friday on a regular basis except for a couple of months when A.F.N. was in sixth

grade and that during those months, she paid for food, clothing, rent, health insurance, uninsured

medical costs, and "anything [A.F.N.] needed." She was not sure what Neal paid for during those

months, but she was "sure [Neal] gave [A.F.N.] money" for school lunches. She also testified that at

one point, she and Neal tried a three-day rotation at each house but "that didn't work out very

long either."

A.F.N., who was eighteen at the time of the trial, provided further inconsistent

testimony. He testified he did not recall a period of time when he lived primarily with his father, but

---

[6] Neal's testimony that A.F.N. lived with him was inconsistent with his responses to interrogatories. When asked to identify dates on which he exercised possession of A.F.N. since 1990, Neal stated "[A.F.N.] split his time 50-50 between my house and his mother."

[7] Neal contended that Upton signed a written agreement on the back of a magazine releasing Neal from his obligation to pay child support to her. Upton denied signing such an agreement, and Neal did not offer a written agreement. Even if the parties reached an alternative arrangement on child support, the approval of the court was required. *See* Tex. Fam. Code Ann. § 154.124 (West 2002).

[8] Neal also called his girlfriend's daughter, one of the daughter's friends, and a friend of A.F.N. as witnesses. The three witnesses testified to time periods that they believed that A.F.N. lived with Neal. Neal contends that the trial court erred in ignoring this testimony, but it was the trial court's role, as the fact finder, to determine the weight to be given to the testimony. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986).

that from the time he was nine until his freshman year in high school, he rotated three days with his father and then three days with his mother and, thereafter, he lived with his mother. A.F.N. testified that Neal gave him lunch money on the days he was at Neal's house and provided him with clothes and school supplies and that he had his own room at Neal's girlfriend's house.

Presented with this conflicting evidence, it was for the trial court to resolve the inconsistencies and to determine which witness or witnesses to believe. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986). Based on the evidence before it, the trial court could have credited Upton's testimony that A.F.N. only lived with Neal for two months in excess of his court-ordered periods of possession, A.F.N.'s testimony that he did not recall a time when he lived primarily with his father, and the accrual of child support prior to A.F.N.'s entry into first grade to support a much lower offset than the trial court found. Given the conflicting evidence, Neal cannot show as a matter of law or by the great weight and preponderance of the evidence that he was entitled to a complete or greater offset than he received from the trial court.[9] *See Pedregon*, 234 S.W.3d at 92-93. We conclude that there was sufficient information on which the trial court exercised its discretion in determining that Neal was not entitled to a complete or greater offset and

---

[9] After the testimony concluded, Neal's counsel even suggested to the trial court partially offsetting the amount owed as an alternative to an entire offset:

> Well, Judge, if you look at the money that's owed, I believe 30,000 is interest so the Court could decide to waive all the interest. And then the Court could decide to split the remaining balance in half since the testimony is somewhat of a 50/50-type of arrangement. That is an alternative.

The trial court thereafter accepted this alternative, offsetting approximately half of the outstanding child support that Neal owed to Upton.

that the trial court's decision was not arbitrary or unreasonable based upon the evidence elicited. *See*

*Tippit*, 167 S.W.3d at 544.

## CONCLUSION

Because we conclude the trial court did not err by failing to offset Neal's child

support arrearage completely or in an amount greater than the amount of offset that it allowed, we

overrule Neal's issue and affirm the trial court's judgment.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   March 5, 2008