**In the Interest of W.J.B. and L.M.B.**

**No. 09–08–00289–CV.**

Court of Appeals of Texas, Beaumont.

Submitted April 3, 2009.

Decided Aug. 27, 2009.

James R. Jones, Sherea Vitelli, Smith & Garg, L.L.C., The Woodlands, for appellant.

Codrut Bolos, The Woodlands, pro se.

Before GAULTNEY, KREGER, and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

Yumara Bolos, the mother of W.J.B. and L.M.B., appeals from the trial court's denial of her motion to enforce a child support arrearage. In four issues, Yumara complains that (1) the evidence concerning the amount of her former husband's past unpaid child support was not controverted, (2) she never relinquished custody of the children to her former husband for a period in excess of her rights under the parties' parenting plan, (3) her former husband failed to establish the affirmative defense he asserted under section 157.008 of the Family Code, and (4) the trial court should have awarded her all past unpaid child support. We affirm the trial court's judgment.

### Background

Codrut Bolos and Yumara Bolos were divorced in the State of Washington in 2003. Under an agreed order establishing their final parenting plan, the children are to reside the majority of the time with Yumara, and she also has the right to designate the children's residence. In addition to specifying certain days on which Codrut is to have possession of the children, the final parenting plan also provides: "The father will come visit the kids whenever possible. As long as he gives the mother notice in advance if it is not on the scheduled parenting plan."

A separate child support order, also entered in connection with their divorce, required that Codrut pay the sum of $798.72 monthly to Yumara beginning August 1, 2002. Yumara acknowledged that Codrut fully paid the court ordered child support between August 2003 and June 2005. Beginning July 1, 2005, Codrut quit paying his monthly child support. At trial, Codrut stipulated that from July 2005 to October 2007 when he, Yumara, and the children lived together, he had not paid child support in the amount of $22,364.16. Codrut paid his monthly child support obligations from November 2007 through the date of the trial, which occurred in March 2008.

In July 2005, and while still living in another state, Codrut purchased a house in Montgomery County, Texas. In that same month, Yumara and the children moved in that house. In August 2005, Codrut moved in with them as well, and lived there until July 2007. Yumara and the children resided at Codrut's house until October 2007, when they moved to a house that Yumara had purchased.

Yumara testified that when Codrut purchased the house in Montgomery County, she expected to pay rent and to live there with the children, but did not expect Codrut to live there. Yumara also testified that she had agreed to pay $800.00 per month to rent the house. However, after Codrut moved into the house, she never paid rent because Codrut "didn't pay me child support." Yumara also testified that after he moved in, she asked him nearly every month about making his child support payment.

During her testimony, Yumara presented a summary of expenses to show that between July 2005 and October 2007, her average child-related expenses had varied between $2,200.00 and $2,700.00 per month. Yumara essentially denied Co-

drut's claim that the living arrangement had resulted from a desire to reunite. According to her, that possibility, after Codrut moved into the Montgomery County house, was never discussed. Yumara did agree that after moving in together, Codrut had paid or provided for various specified expenses that benefitted the children. Generally, Yumara explained that she felt obligated to pay the children's expenses, but did not think the obligation applied "if there's another adult involved." She further explained, "[T]he money that he paid for living expenses, you incur whether you have children or not." In response to a question by the trial court, Yumara admitted that while they were living in the Montgomery County house, Codrut had actual possession of the children that exceeded the Washington State parenting plan. Yumara also told the trial court that during that period, both of them had supported the children and that she had worked for twenty of the twenty-four months as a registered dental assistant.

According to Codrut, he purchased the house in Montgomery County after his parents died with the hope that he, Yumara, and the children could live together again as a family. In making that decision, Codrut stated that he did not contemplate that he might be required to continue to pay child support after moving into the house. Codrut considered that he and Yumara had a shared custody arrangement that greatly exceeded the time provided to him in the parenting plan. Codrut disputed Yumara's claim that she periodically requested that he pay child support, and he testified that the question of his paying child support while they lived together was never discussed. Codrut explained that while they lived together, he was a stay-at-home dad who earned income by purchasing properties in tax foreclosure proceedings. After moving back into the house,

Codrut explained that he was at home every day when the children came home from school, supervised their homework, and considered himself to be a full-time parent.

In testifying about the household expenses during the period in issue, Codrut explained that he paid all of the monthly mortgage payments on the house, which ranged from $851.00 to $870.00 per month, and paid the annual homeowner's association fees. Codrut further stated that he began paying the utility bills at the house in December 2005 and continued to pay them until Yumara moved. He also paid for the telephone bills and various other specified expenses incurred on behalf of the children, as well as advanced funds to Yumara to purchase a car. Codrut identified a summary of his expenses for the period between August 2005 and October 2007, claimed that it showed the expenses he incurred related to supporting the children, and estimated that his monthly support contributions during that period averaged approximately $2,000.00.

Codrut also testified about his expectations regarding the living arrangement during the period in issue. On cross-examination, Codrut denied that he had ever discussed renting the house to Yumara. Instead, Codrut explained that he understood the living arrangement during this period to be that they "would try to be a family again." Codrut further agreed that he would have incurred mortgage expenses on the house even if the children had not lived there, but he questioned whether he would have needed a three bedroom house had they not agreed to live together.

On examination by the trial court, Codrut estimated the fair monthly rental on the home to be $1,200.00 monthly. The record also contains exhibits introduced by both parties including bills, checks, bank statements, and summaries that demon-strate each had incurred expenses for the children's support.

Codrut and Yumara were the only witnesses who testified during the hearing. In summary, each held a different opinion about whether Codrut had completely met his child support obligation under the Washington court's order, about how to account for expenses incurred while living together that had benefitted the children, and about the amount of actual support Codrut had provided the children during the period in issue.

## Jurisdiction

Yumara appeals from a court order denying her recovery on a claim of unpaid child support. Her pleading is titled "Motion For Enforcement Of Child Support Order And Order To Appear." In her motion, Yumara sought to confirm the amount of back child support, have a judgment rendered for that amount, and have Codrut held in contempt and confined to jail.

■ Because we have no jurisdiction to hear an appeal from a trial court's judgment refusing to hold a party in contempt, we requested that the parties address whether the trial court's order was appealable. *See Norman v. Norman,* 692 S.W.2d 655, 655 (Tex.1985) (holding that court of appeals erred in assuming jurisdiction over appeal from a trial court's denial of a motion to hold a party in contempt for failing to pay back child support). Yumara, through her attorney, responded, and contends that an order denying a claim for a child support arrearage is an appealable order; therefore, she argues we have jurisdiction over the appeal. Codrut, acting pro se, also responded to our letter, and he contends that we do not have jurisdiction over the appeal.

Yumara's issues on appeal do not assert that the trial court erred in refusing to hold Codrut in contempt of court. The issues on which Yumara appeals, as stated in her brief, all concern that portion of the trial court's order denying her request that the trial court confirm and then reduce the alleged child support arrearage to judgment.

▮ Courts of Appeals have jurisdiction to hear appeals from court orders to the extent the order concerns a decision to grant or deny a monetary judgment for a child support arrearage. *See* TEX. CONST. art. V, § 6(a); TEX. GOV'T CODE ANN. § 22.220(a) (Vernon 2004) (granting appellate jurisdiction to Courts of Civil Appeals for judgments rendered in cases in which the amount in controversy exceeds $100, exclusive of interest and costs); TEX. FAM. CODE ANN. §§ 157.261–.264 (Vernon 2008) (making a trial court's arrearage judgment final). Because Yumara's appeal concerns the trial court's denial of an alleged arrearage claim, and because the amount in controversy exceeds $100, we conclude that we have jurisdiction over the portion of the order that Yumara has appealed.

### Standards of Review

▮ In nonjury trials, the trial court acts as the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony. *Beck v. Walker*, 154 S.W.3d 895, 901 (Tex.App.-Dallas 2005, no pet.). Generally, weighing the evidence, drawing inferences from the facts, and choosing between conflicting inferences is the factfinder's function. *Ramo, Inc. v. English*, 500 S.W.2d 461, 467 (Tex. 1973); *Beck*, 154 S.W.3d at 901.

▮ We review the issue of whether a court erred in entering an order granting an offset to a child support arrearage under an abuse of discretion standard. *Beck*, 154 S.W.3d at 901; *Attorney Gen. of Tex.*

*v. Stevens*, 84 S.W.3d 720, 722 (Tex.App.-Houston [1st Dist.] 2002, no pet.). "The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990). In determining whether a trial court abused its discretion, we view the evidence in the light most favorable to the trial court's decision and indulge every legal presumption in favor of the judgment. *Royer v. Royer*, 98 S.W.3d 284, 285 (Tex.App.-Beaumont 2003, no pet.). We will uphold the trial court's decision as long as there is some evidence of a substantive and probative character to support it. *Id.*

▮ When no findings of fact or conclusions of law are requested or filed, we presume that a trial court made all of the findings necessary to support its judgment. *Worford*, 801 S.W.2d at 109; *see Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex.1992); *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex.1989). When the appellate record includes the reporter's and clerk's records, implied findings are not conclusive and may still be challenged for legal and factual sufficiency. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex.2002). However, to do so, the implied finding in question must be challenged in the appeal, and without a challenge an appellate court may not consider whether there is sufficient evidence to support the trial court's judgment. *See Pat Baker Co., Inc. v. Wilson*, 971 S.W.2d 447, 450 (Tex.1998) ("It is axiomatic that an appellate court cannot reverse a trial court's judgment absent properly assigned error.").

### Discussion

In this case, there was no dispute between the parties regarding the child sup-

port amount that Codrut had not paid. Instead, the dispute concerns whether Codrut established his right to offset unpaid child support with the actual support he provided while the children lived with him; a right he contends is provided by section 157.008 of the Family Code. *See* TEX. FAM. CODE ANN. § 157.008 (Vernon 2008).[1]

In her first issue, Yumara contends that the trial court erred in denying her request for an arrearage because "the evidence was uncontroverted that the amount of child support pleaded for was unpaid at the time of trial." After the hearing, Yumara did not request that the trial court enter any findings of fact or conclusions of law. Though the record shows that the amount of child support actually provided by Codrut was disputed, Yumara does not challenge the trial court's implied finding that Codrut provided actual support equal to or greater than the unpaid support required of him under the child support order.

■■■ While implied findings may be challenged for legal and factual sufficiency, we do not determine the sufficiency of the evidence supporting the finding without such a challenge. *See Marchand,* 83 S.W.3d at 795; *Wilson,* 971 S.W.2d at 450. Because the trial court's implied finding that Codrut proved that he provided actual support in a sufficient amount to offset his child support obligation is not challenged on appeal, we overrule issue one.

■■■ In issues two and three, Yumara challenges the trial court's implied finding that Yumara had relinquished actual possession and control of the children to Codrut during the period of time in issue in a manner that exceeded his possessory rights under the parenting plan. Codrut bore the burden of proving that Yumara had voluntarily relinquished the children in excess of any court-ordered periods and of proving the amount of actual child support that he provided during that period. *See* TEX. FAM.CODE ANN. § 157.008(a),(b); *Gonzalez v. Tippit,* 167 S.W.3d 536, 543–44 (Tex.App.-Austin 2005, no pet.). Because Codrut had the burden of proving his offset, and prevailed in the trial court, Yumara must show that no evidence supports the findings that are adverse to her in order to prevail on her legal sufficiency challenge of the trial court's judgment. *See Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983); *Christus St. Mary Hosp. v. O'Banion,* 227 S.W.3d 868, 873 (Tex.App.-Beaumont 2007, pet. denied).

■■■ After reviewing the record, which contains the parenting plan, and the testimony presented to the trial court, we conclude that there is legally sufficient evidence to support the trial court's implied findings related to Codrut's offset claim. Evidence is legally sufficient if it "would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). In evaluating the evidence's legal sufficiency, we credit evidence that

---

1. Section 157.008 of the Family Code, in pertinent part, provides:

(a) An obligor may plead as an affirmative defense in whole or in part to a motion for enforcement of child support that the obligee voluntarily relinquished to the obligor actual possession and control of a child. (b) The voluntary relinquishment must have been for a time period in excess of any court-ordered periods of possession of and access to the child and actual support must have been supplied by the obligor.

. . . .

(d) An obligor who has provided actual support to the child during a time subject to an affirmative defense under this section may request reimbursement for that support as a counterclaim or offset against the claim of the obligee.

TEX. FAM CODE ANN. § 157.008 (Vernon 2008).

supports the verdict if reasonable factfinders could, and disregard contrary evidence unless factfinders could not. *Kroger Tex. Ltd. P'ship v. Suberu,* 216 S.W.3d 788, 793 (Tex.2006) (citing *City of Keller,* 168 S.W.3d at 827); *Am. Interstate Ins. Co. v. Hinson,* 172 S.W.3d 108, 114 (Tex. App.-Beaumont 2005, pet. denied). We sustain legal sufficiency challenges "when, among other things, the evidence offered to establish a vital fact does not exceed a scintilla." *Suberu,* 216 S.W.3d at 793. "Evidence does not exceed a scintilla if it is 'so weak as to do no more than create a mere surmise or suspicion' that the fact exists." *Id.* (quoting *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 601 (Tex.2004)).

While the parenting plan created custody rights and gave Codrut control of the children, it did not give Codrut the type of control and possession that Yumara gave him when they lived together during the period now in issue. The record reflects that the children were in Codrut's possession and control at times when, under the parenting plan, they would have been with Yumara. Yumara's own testimony demonstrates that during the majority of the period in issue she allowed Codrut to have either joint possession or sole possession of the children for periods exceeding the periods contemplated by the parenting plan.

Yumara argues that despite their living arrangement during the time period in issue, she did not relinquish possession and control of the children to Codrut because the children were not domiciled separate from her. The statutory provision in issue does not define the term "relinquish," and the statute expressly contemplates that the relinquishment of control and possession be evaluated under the terms of the divorce decree's possession orders for the "time period in excess of any court-ordered periods of possession of and access to the child[.]" TEX. FAM.CODE ANN. § 157.008(b). Thus, the statute generally requires the trial court to compare the rights given each parent at the time of the divorce, usually found in the parties' divorce decree, with the circumstances present during the period in issue. This is generally a fact intensive inquiry, as the record reflects here. Based on this record, we believe that the trial court could reasonably conclude from the evidence that Yumara had achieved rights to sole periods of possession that she "voluntarily relinquished" by allowing Codrut to move into the home and to act as a full-time parent, which included paying for the children's actual support during that time. Thus, there is legally sufficient evidence from which the trial judge could reasonably conclude that Yumara voluntarily relinquished some of the possession rights previously established in the parenting plan's order.

In her brief, Yumara cites one Texas Supreme Court case and four intermediate appellate court cases to support her proposition that voluntary relinquishment occurs only when a child's domicile is separate from that of the obligee's. In *In re A.M.,* 192 S.W.3d 570, 574 (Tex.2006), the Texas Supreme Court held that a child support obligor was not entitled to obtain both an offset and reimbursement for the support he provided while his children lived with him; the case does not address a situation like the one before us that involves a family living in the same household following a divorce. Additionally, *In re A.M.* does not hold that the child's domicile must be separate from that of the obligee as a condition of proving the right to an offset under the statute's terms.

In one of the four court of appeals cases cited by Yumara, *Norman v. Norman,* 683 S.W.2d 548, 550–51 (Tex.App.-Fort Worth) (en banc), *rev'd, dism. w.o.j.,* 692 S.W.2d

655 (Tex.1985) (per curiam), a plurality of the Fort Worth Court of Appeals construed a predecessor offset statute that is similar to the current support offset provision. *See* Act of May 30, 1983, 68th Leg., R.S., ch. 424, § 10, 1983 Tex. Gen. Laws 2346, 2358, *repealed by* Act of May 25, 1985, 69th Leg., R.S., ch. 232, 1985 Tex. Gen. Laws 1158 (but see Act of May 25, 1985, 69th Leg., R.S., ch. 232, § 9, 1985 Tex. Gen. Laws 1158, 1163, wherein offset statute amended from 1983 version and continued in effect), *repealed by* Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 2(1), 1995 Tex. Gen. Laws 113, 282. In construing that 1983 statute, the plurality applied a standard requiring the father to prove that he had an affirmative agreement with the mother to change the child's residence in order to establish that the offset applied. *Norman,* 683 S.W.2d at 550. Because the Texas Supreme Court reversed *Norman,* the Fort Worth Court of Appeals' opinion is without any precedential value. Moreover, unlike the facts of this case, the child involved in *Norman* left the mother's residence without the mother's consent to live with the father. *Id.* at 551. *Norman* is also factually distinguishable because the living arrangement we consider here was consensual, and there is no evidence that it conflicted with Yumara's wishes. We conclude that *Norman* provides no support for Yumara's argument.

Yumara also cites *Pedregon v. Sanchez,* 234 S.W.3d 90 (Tex.App.-El Paso 2007, no writ), in support of her separate domicile argument. In *Pedregon,* the trial court denied the father's offset claim during the periods of time the child lived with him. *Id.* at 92, 96. On appeal, the El Paso Court of Appeals affirmed because the father failed to provide any evidence of the actual support he had provided. *Id.* at 96. Unlike *Pedregon,* Yumara does not assert in her appeal that Codrut's testimony pro-

vided no evidence of his actual support during the period in issue. Moreover, the El Paso Court did not address the argument Yumara raises here, that the child's domicile must be separate from hers or the offset statute does not apply. Thus, *Pedregon* is distinguishable.

*In re M.P.M.,* 161 S.W.3d 650, 653–54 (Tex.App.-San Antonio 2005, no pet.), upon which Yumara also relies, involves a child that established a separate domicile with her father after leaving her mother's home. The issue in *M.P.M.* concerned whether the trial court properly allowed the offset, as the child's mother challenged on appeal whether the evidence supported the trial court's finding that she had voluntarily relinquished the child. *Id.* at 655–56. The appeals court affirmed, finding evidence that the relinquishment had been voluntary in part because the record included testimony that the mother shut the door in the child's face and told her she did not live with her anymore when the child left her mother's home. *Id.* at 655, 661. However, there is no discussion in the opinion concerning whether the father's possession was required to be exclusive, likely because, during the periods in issue, it was exclusive. Thus, because the fact situation was not before it, the appellate court did not address whether the obligor seeking an offset *must* demonstrate that the child lived exclusively with the obligor to establish a right to successfully assert a statutory offset.

Finally, Yumara cites *Ex Parte Seligman,* 9 S.W.3d 452, 453 (Tex.App.-San Antonio 1999, no pet.) for the proposition that co-habitation following divorce cannot constitute a relinquishment of possession. In *Seligman,* the trial court denied the father's claim of an offset even though the family had continued to live together after the divorce. *Id.* Importantly, the evidence in that case showed that after the divorce,

and although they continued to live together, the ex-wife testified that she had done so out of economic necessity. *Id.* The testimony also reflected that following the divorce and while they lived together, the ex-husband took all of the ex-wife's earnings and used her money to support the family. *Id.* The San Antonio Court of Appeals, in answering the obligor's challenge to the trial court's denial of his claimed credit, held: "Nothing in the record indicates anything close to relinquishment." *Id.* Nevertheless, in *Seligman* the court did not state that residing together in the same household following a divorce would never support an inference that the obligee had voluntarily relinquished rights. Consequently, both factually and legally, *Seligman* represents a different situation than is before us here.

Here, following an evidentiary hearing at which the parents both testified, the very capable trial judge acting as the fact finder found that a voluntary relinquishment had occurred. The trial court was entitled to draw reasonable inferences from the testimony and to weigh the credibility of each of the witness's versions of the facts regarding the living arrangement. Based on the evidence at the hearing, and deferring to the trial court's assessments on each witness's credibility, there is legally sufficient evidence in this record to support the trial court's conclusion that Yumara voluntarily relinquished, in part, possession rights awarded to her for the period in issue. The trial court's decision that Yumara had voluntarily relinquished some part of her possessory rights under these circumstances does not constitute an abuse of discretion.

In concluding that periods of joint possession, along with sufficient evidence of actual support during such period, may be sufficient evidence to allow the statutory offset provision to apply, we also consider the purpose of the statute. The right to claim a statutory offset during periods of a child's voluntary relinquishment first became an affirmative defense to a claimed child support arrearage in 1983.[2] *See* Act of May 30, 1983, 68th Leg., R.S., ch. 424, § 10, 1983 Tex. Gen. Laws 2346, 2358. The legislative history of the provision appears intended to remedy a requirement that had previously been imposed by some courts to make child support obligors meet their child support obligation twice under some circumstances; first, when actually providing support to the child during periods the child was voluntarily in the obligor's possession, and second, when the court enforced an arrearage claim. *See, e.g., Arnold v. Pitts,* 777 S.W.2d 773, 775 (Tex.App.-Beaumont 1989, no writ) (noting that the statutory change to the Family Code distinguishes those cases that did not allow for an offset during periods the obligee had voluntarily relinquished a child); *Fowler v. Stone,* 600 S.W.2d 351, 353 (Tex. Civ.App.-Houston [14th Dist.] 1980, no writ) (holding that directly supporting the children while living with them is not a sufficient defense to an arrearage, as it would constitute an impermissible collateral attack on the terms of the prior divorce decree); *In re McLemore,* 515 S.W.2d 356, 358 (Tex.Civ.App.-Dallas 1974, no writ) (refusing to consider credit claimed as a defense to a contempt order arising from the obligor's failure to pay support through the child support office); *Lee v. Lee,* 509 S.W.2d 922, 924–26 (Tex.Civ.App.-Beaumont 1974, writ ref'd n.r.e) (requiring husband to pay child support arrearage despite his providing actual support and

**2.** Prior to 1983, we find no statute providing for a right of offset under circumstances where the parties had failed to follow the possession arrangement contemplated by the divorce decree.

the child moving out of her mother's house and into her father's); *Akin v. Akin*, 417 S.W.2d 882, 885 (Tex.Civ.App.-Austin 1967, no writ) (stating that court's duty was to enforce divorce decree, as the only remedy for child's moving in with obligor was for the obligor to directly attack the divorce decree in the court that had rendered it).

To the extent statutes are remedial, courts, in general, broadly construe them. *See Burch v. City of San Antonio*, 518 S.W.2d 540, 544 (Tex.1975); *City of Mason v. W. Tex. Utils. Co.*, 150 Tex. 18, 237 S.W.2d 273, 280 (1951). Specifically, "[i]f a statute is curative or remedial in its nature, the rule is generally applied that it be given the most comprehensive and liberal construction possible." *City of Mason*, 237 S.W.2d at 280. Therefore, the legislature's intent, as expressed by the language used in Family Code section 157.008, appears aimed at allowing the trial judge the discretion to deny enforcement of an arrearage claim where the obligor proves he has provided actual support and the obligee has voluntarily relinquished the child "for a time period in excess of any court-ordered periods of possession of and access to the child. . . ."

Because the statute does not define the term relinquish and then utilizes the term in the same provision requiring the court to compare the period in issue to "any court-ordered periods of possession," it is not clear whether the legislature intended that the obligor's possession be exclusive during the period under consideration, or whether the only relinquishment required was that which allowed the obligor greater rights to possession than those allocated to the obligor in the divorce decree. Although the statutory language is unclear, the equity to allow a court to consider the myriad of factual circumstances on a claimed credit, and the discretion to allow an offset where actual support has been proven paid, are no different. To construe the statute narrowly would require the obligor to meet his child support obligation twice during periods in which the obligor's possession exceeded that contemplated in the decree. Considering the statute's apparent intended remedial purpose, we decline the request to construe the statute to interpret relinquish to mean giving up all rights of control and possession. Further, under the Code Construction Act, we are required to construe statutes to achieve "a just and reasonable result." Tex. Gov't Code Ann. § 311.021(3) (Vernon 2005).[3]

Yumara was not divested of any possessory rights she had been awarded in the parenting plan; instead, the trial court's order allowing an offset reflects the court's conclusion that Yumara voluntarily chose a living arrangement for a certain period of time that altered the rights she possessed under the orders issued at the time of her divorce, and that during that period, Codrut actually supported the children sufficiently to meet his child support obligation under the Washington support order. We hold that section 157.008's statutory offset defense offered a potential affirmative defense to Yumara's arrearage claim. We further hold that the evidence is legally sufficient to show that Yumara temporarily relinquished some of her rights under the parenting plan during the period in issue sufficient to allow the trial court to exercise discretion and allow the offset. Thus, we overrule issues two and three.

---

3. The Code Construction Act applies to the Family Code. *See* Tex Gov't Code Ann. § 311.002 (Vernon 2005); *In re A.S.M.*, 172 S.W.3d 710, 714–15 n. 4 (Tex.App.–Fort Worth 2005, no pet.); *see also In re R.J.J.*, 959 S.W.2d 185, 186 (Tex.1998) (applying Code Construction Act to family code provision).

In issue four, Yumara contends she is entitled to recover attorney's fees because she proved that Codrut did not make all of his court-ordered child support payments. *See* Tex. Fam.Code Ann. § 157.167 (Vernon 2008). In her brief, Yumara concedes that she cannot recover her attorney's fees if Codrut prevails on his affirmative defense asserting a complete offset of her claim for past unpaid child support. Because the trial court completely offset Codrut's arrearage and awarded no past due child support payments, the trial court also made the implied finding that Codrut had not failed to make child support payments. Having found the evidence legally sufficient to support that finding, we find issue four has no merit.

Accordingly, we overrule all of Yumara's issues. The trial court's judgment is affirmed.

AFFIRMED.

CHARLES KREGER, Justice, dissenting.

I respectfully dissent. The majority holds that "Yumara does not challenge the trial court's implied finding that Codrut provided actual support equal to or greater than the unpaid support required of him under the child support order." Relying on *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex.2002),[4] the majority declines to review whether Codrut met his burden to prove an element of his affirmative defense; that being whether or not he supplied actual support during the period of time in question. I read Yumara's brief sufficiently broad to include her claim that the evidence was legally insufficient for the trial court to allow an offset against the stipulated child support arrearage. *See Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex.2008) ("[D]isposing of appeals for harmless procedural defects is disfavored.... Appellate briefs are to be construed reasonably, yet liberally, so that the right to appellate review is not lost by waiver. Simply stated, appellate courts should reach the merits of an appeal whenever reasonably possible.") (citations omitted). In issue three, Yumara argues that Codrut failed to offer any evidence of actual support. Because Codrut failed to present any evidence of actual support, I would find the trial court abused it discretion in finding for Codrut on his affirmative defense and reverse and render judgment for arrears in the amount stipulated by Codrut. An abuse of discretion occurs when the trial court's decision is contrary to the only permissible view of the evidence. *In re Barber*, 982 S.W.2d 364, 366 (Tex.1998) (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992)).

The Texas Supreme Court has established that to assert the affirmative defense of offset provided by section 157.008 of the Texas Family Code, the following conditions must be met: "(1) the obligee must have voluntarily relinquished actual possession and control of the child to the obligor; (2) for a period exceeding court-ordered periods of possession and access to the child; (3) during which the obligor

---

4. In this case, the majority's reliance on *Marchand* is misplaced as the discussion there centered on the appropriate standard of review for an interlocutory appeal from the denial of a special appearance. *See Marchand*, 83 S.W.3d at 793–94. The appropriate standard is one we have used in a number of family law cases. *See Wilson v. Wilson*, No. 09-07-484 CV, 2008 WL 2758147, *1 (Tex.App.-Beaumont July 17, 2008, no pet.); *Carlin v. Carlin*, 92 S.W.3d 902, 905 (Tex. App.-Beaumont 2002, no pet.); *Farish v. Farish*, 921 S.W.2d 538, 542 (Tex.App.-Beaumont 1996, no writ) (under abuse of discretion standard, legal and factual sufficiency are not independent grounds of error but are merely factors in assessing whether trial court abused its discretion).

must have supplied actual support." *In re A.M.*, 192 S.W.3d 570, 574 (Tex.2006) (citing Tex. Fam.Code Ann. § 157.008(a) (Vernon 2008)). "If these conditions are met, the obligor 'may request reimbursement for that support as *a counterclaim or offset against the claim of the obligee.*' " *Id.* (quoting Tex. Fam.Code Ann. § 157.008(d)). Failure to prove all elements results in a failure to establish the affirmative defense. *Pedregon v. Sanchez,* 234 S.W.3d 90, 94 (Tex.App.-El Paso 2007, no pet.). Yumara sought judgment for unpaid child support from July 2005 through October 2007. A child support payment not timely made constitutes a final judgment for the amount due and owing. Tex. Fam.Code Ann. § 157.261(a) (Vernon 2008). Therefore, each child support payment missed by Codrut constituted a separate claim by Yumara. *See Lewis v. Lewis,* 853 S.W.2d 850, 854 (Tex.App.-Houston [14th Dist.] 1993, no writ). To meet his burden of proof to show himself entitled to the affirmative defense of offset, Codrut was required to offer evidence of actual support for each individual month for which arrearage was sought.

Codrut's assertion that Yumara voluntarily relinquished the children in excess of the court order is based upon a shared living arrangement. Codrut admitted he did not move in with Yumara until August 2005. Therefore, there was clearly no evidence of any voluntary relinquishment of actual possession and control of the children for a period exceeding court-ordered periods of possession and access provided by the parenting plan during the month of July 2005, thereby precluding Codrut from meeting his burden to claim the offset for that month. Further, Codrut admitted that he moved out of the house and terminated the shared living arrangement in August 2007, but he did not begin regular payment of child support until November 2007. Therefore, he failed to offer any evidence of a voluntary relinquishment of the children in excess of the court order to entitle him to claim the offset for the months of August, September, and October 2007. I would reverse the trial court's order and enter judgment for the child support arrearage for each of these months.

To prove actual support paid by Codrut during the months of cohabitation, Codrut offered evidence that he paid all monthly mortgage payments on the home during the period at issue, as well as the annual homeowners' association fees. The record shows, however, that he was the owner of the home and was simply paying the purchase money mortgage on the home and associated homeowners' association fees as the homeowner, regardless of whether the children or Yumara were living in the house. *See Pedregon,* 234 S.W.3d at 95. A parent has a common law duty to support his children. *See In re McLemore,* 515 S.W.2d 356, 358 (Tex.Civ.App.-Dallas 1974, no writ). Further, section 151.001(3) of the Texas Family Code provides that a parent has "the duty to support the child, including providing the child with clothing, food, shelter, medical and dental care, and education[.]" Tex. Fam.Code Ann. § 151.001(3) (Vernon 2008). Codrut's payment of the monthly mortgage payments and annual homeowners' association fees are no evidence of actual support paid to entitle him to an offset pursuant to section 157.008. Codrut submitted evidence that he paid the electric bill for the house beginning in December 2005. However, even then, he only provided documentary evidence that he paid sporadic monthly electric bills beginning at the earliest in December 2005 through September 2006, while Codrut admitted that Yumara paid all other utilities for the house during the periods in question. Payment of one of the utilities supplied to the house, electrici-

ty, would also come under the common law and statutory duty of a parent to support his children and would not be considered actual support for purposes of obtaining an offset against child support arrearages.

Additionally, Codrut submitted evidence that he paid some of the children's medical bills. Here again, the divorce decree ordered Codrut to maintain health insurance for the children. The record shows that Codrut did not have the children covered by health insurance during the periods in question, as ordered by the court. In Texas, "[a] parent ordered to provide health insurance ... who fails to do so is liable for[ ] necessary medical expenses of the child[ren]...." *Id.* § 154.188(1). Therefore, as Codrut was responsible for all necessary medical expenses of the children as part of another court order, payment of any part of the children's medical expenses is no evidence of actual support provided under the affirmative defense of offset for child support arrearages.

In further support of his affirmative defense for offset against the stipulated amount of child support arrearages, Codrut testified that he was saving the obligee money by her not having to pay rent nor having to pay for day care for the children while the children were in his possession and, thus, was entitled to an offset against any arrearages for the value of the amounts the obligee would have paid had she not relinquished actual possession and control to him during these times of the day. However, this has never been shown to be a valid offset against child support obligations. *But see In re A.L.G.,* 229 S.W.3d 783, 785–87 (Tex.App.-San Antonio 2007, no pet.) (noting arrearage judgment against father was reversed because mother knew, but never complained, that for 15 months father was paying child's daycare tuition and subtracting that amount from child support he paid her).

When the obligor is not the children's sole source of support, there is no presumption that the obligor's monthly child support obligation is equal to the actual support the obligor provided the children but, the obligor must provide some evidence of the amount of actual support paid to enable the trial court to determine the proper amount of the offset, if any. *See Pedregon,* 234 S.W.3d at 95–96. Because Codrut failed to present any evidence of actual support paid, I would find the trial court abused its discretion in allowing the offset and reverse and render judgment for the stipulated amount of arrearage owed plus interest.