William E. NORMAN, Appellant,

v.

Marsha D. NORMAN, Appellee.

No. 2–84–077–CV.

Court of Appeals of Texas, Fort Worth.

Jan. 16, 1985.

William C. Odeneal, Dallas, for appellant.

Burt Barr & Associates and Burt Barr, Dallas, for appellee.

## OPINION

FENDER, Chief Justice.

This is an appeal from a judgment nunc pro tunc entered December 13th, 1983. Appellee (movant below) filed a motion for contempt alleging that appellant was $600 in arrears on his child support payments. Appellant testified at hearing that he had unilaterally reduced the payments from $400 to $200 a month for the months of September, October and November, 1983. Appellant asserted as defenses that (1) he had previously made over-payment to ap-

pellee, and that (2) since the couple's son had started living with him, newly enacted TEX.FAM.CODE ANN. sec. 14.09(e) (Vernon Supp.1984) permitted him to reduce payments.

After a hearing on the matter, the trial court ruled that appellant was not in contempt of court because he had mistakenly relied on an erroneous interpretation of sec. 14.09(e). However, in his judgment nunc pro tunc the trial court ordered appellant to pay $600 in back child support that he owed. Appellant was also ordered to pay appellee's attorney's fees of $250.00.

We affirm.

■ In his first point of error appellant asserts that the judge improperly reduced the unpaid child support payments to judgment. Appellant cites authority which states that a reduction to judgment cannot be made unless it was first pled. This reasoning is inapplicable here, however, because the trial court did not reduce the unpaid child support payments to judgment as understood by sec. 14.09(c) of the Texas Family Code. Rather he simply *reaffirmed* the obligation of appellant to pay child support. The judge's order did not constitute a reduction to judgment because it does not allow appellee to execute on appellant's property in order to satisfy the unpaid child support. In fact, the trial court acknowledged that if appellant refused to pay the back child support payments appellee could come back and file another contempt motion. Appellant's first point of error is overruled.

■ In his second point of error appellant contends that an award of attorney's fees is not proper since he was not found to be in contempt. However, under TEX.R. CIV.P. 308–A the trial court was authorized to assess attorney's fees based on appellant's default, even though he was not held in contempt. *Smith v. Smith*, 643 S.W.2d 523, 525 (Tex.App.—Austin 1982).

In his third point of error appellant claims the judgment is against the great preponderance of the evidence. In this regard, appellant urges that his testimony and the testimony of appellee show that appellant had established an affirmative defense to the contempt action as provided by TEX.FAM.CODE ANN. sec. 14.09(e) (Vernon Supp.1984). That provision reads:

(e) If the managing conservator has voluntarily relinquished to a possessory conservator under court order to pay child support the actual care, control, and possession of a child in excess of the court-ordered periods of possession of and access to the child, the possessory conservator may affirmatively plead and prove the fact that he or she has supplied actual support to the child as a defense in whole or part to a motion for contempt for failure to make periodic payments according to the terms of a court order.

Before we can evaluate the evidentiary question here raised by appellant, we must first determine what the legislature meant by a managing conservator "voluntarily relinquishing" a child to a possessory conservator. The trial court reasoned that for there to be a voluntary relinquishment there must be some kind of formal agreement between the managing conservator and possessory conservator, rather than just a de facto change of residence of the child. In other words, a managing conservator cannot merely tolerate or acquiesce in a child's change of residence, she or he must affirmatively agree to it.

■ We agree. First, we note that "relinquish" means to abandon, to give up, to surrender, or to renounce. Black's Law Dictionary, 1161 (5th ed. 1979). To relinquish a child requires a greater amount of affirmative action than to tolerate or acquiesce in that child's change of residence. Second, we believe that any lesser standard than one of affirmative agreement by the managing conservator would seriously undermine the sanctity of a trial court's determination that the possessory conservator should make child support payments of a certain amount. Further, a lesser standard than one of affirmative agreement would create an environment in which a possessory conservator might be tempted to induce a child to live with him. If the managing

conservator then failed to take legal action because of ignorance, fear of high legal fees, or some other similar reason, the possessory conservator could then reduce child support payments.

In applying this standard to the case at bar, we must consider all the evidence, both that in support of and contrary to the trial court's finding that the mother had not voluntarily relinquished the child, to determine if the judgment is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). The record shows that the mother testified that the child in question, a 16-year-old boy, left her residence in April, 1983, and went to reside with his father. The mother stated she knew the child was residing with his father, but she claimed it was without her permission. She admitted that she had never filed any motion to compel him to return home, but stated she did not think she could take such action or make the child come home. Appellant stated that the child had begun residing with him some time before April, 1983, but as noted above, the mother's testimony contradicts this assertion. Appellant also stated that he had provided all the child's support from the time the child began to reside with him, which the record shows was no later than April, 1983. As this statement was made at a hearing in December, 1983, it appears appellant had been fully supporting the child for a period of about seven months, although it was not until September, 1983, that he began to reduce his child support payments.

After considering all this testimony, we find that the judgment is not against the great preponderance of the evidence. There is no testimony that the mother affirmatively agreed to relinquish the child to appellant. Appellant's third point of error is overruled.

In his fourth point of error appellant claims that the trial court should have taken into account previous overpayments of child support. Although appellant apparently introduced into evidence a copy of the record of child support payments made to Dallas County, no copy of that document appears in the record on appeal. However, even assuming that appellant did in fact make overpayments it was not reversible error for the trial court to reaffirm appellant's obligation to make monthly payments.

We can not accept appellant's implicit argument here that an obligation to make child support payments is somehow like a commercial installment contract for which prepayments can be taken into account. Appellant has produced no authority to show that previously made excessive contributions for child support must be credited by the trial court in a contempt action. Appellant made the overpayments more than two years prior to his decision to reduce his child support payments, and there is no evidence that such overpayments were anything but voluntary. His gratuitous decision to make such overpayments does not alter his obligation to comply with the schedule of child support payments as set forth in the divorce decree. Appellant's fourth point of error is overruled.

The judgment is affirmed.

ASHWORTH and BURDOCK, JJ., join.

HILL, Justice, concurring.

I concur in the result reached by the majority, because I believe that the mother's testimony that the child is with the father without her permission but that she felt that she could not do anything about it because of his age is sufficient to support the trial court's decision that the relinquishment was not voluntary. I do not agree, however, with the majority's conclusion that there must be a formal agreement in order for there to be a voluntary relinquishment. For example, an older child might decide on his own to go live with the possessory conservator and the managing conservator might decide that the child's decision was correct and permit the child to go. Since communication is very often a

problem in these situations, it is possible that this could occur in the absence of any express agreement between the managing and possessory conservator. Such a relinquishment would be voluntary and the terms of the statute should apply. The absence of a formal agreement would not make such a voluntary relinquishment involuntary. Since so much interaction between managing conservators and possessory conservators is done on an informal basis, the requirement of a "formal agreement," when none is required by the statute, would result, in many instances, in the defeat of the purpose of the statute.

JORDAN, Justice, dissenting.

I respectfully dissent.

I disagree with the majority's ruling on appellant's point of error three. The undisputed evidence in this case convinces me that the sixteen-year-old boy in this case resided voluntarily with his father for one year with appellee's tacit approval. She took no action to force the return of the child to her as managing conservator. The facts of this case trigger the application of TEX.FAM.CODE ANN. sec. 14.09(e) (Vernon Supp.1984) and permit the father to reduce the ordered child support as he did.

It is not necessary, under sec. 14.09(e) to have a formal or written agreement of relinquishment by the managing conservator. Actions or conduct of the managing conservator can, depending on the circumstances, constitute voluntary relinquishment. It would be manifestly unfair and unjust in this case to require the father to pay the full amount of court ordered support when the record shows unequivocally that for a year the child in this case lived with him without any protest or disapproval, written or otherwise, from appellee.

The judgment is against the great weight and preponderance of the evidence and is manifestly wrong and unjust. I would reverse the judgment for $600.00 back child support and $250.00 attorney's fee.

JOE SPURLOCK, II and GRAY, JJ., join.

J.M.R., Appellant,