**Dissenting Opinion Filed February 2, 2021**



In The
### Court of Appeals
### Fifth District of Texas at Dallas

**No. 05-20-00983-CV**

**IN RE C.D.C., RELATOR**

**Original Proceeding from the 439th Judicial District Court**
**Rockwall County, Texas**
**Trial Court Cause No. 1-15-698**

## DISSENTING OPINION
Before Justices Pedersen, III, Carlyle, and Garcia
Dissenting Opinion by Justice Pedersen, III

In a Chapter 156 modification proceeding, may a trial court (i) increase a parent's possession and for the first time designate the parent as the primary conservator yet (ii) simultaneously, implicitly find that parent unfit and award conservatorship and possessory rights to a nonparent?

This case is a SAPCR modification dispute over the trial court's temporary orders (i) designating the child's maternal grandparents ("Grandparents") as nonparent managing conservators, (ii) awarding Grandparents possession and access to the child, and (iii) designating Mother as a joint managing conservator after Mother admitted to being an unfit parent, unable to care for the child. Father asserts that the trial court abused its discretion by entering these orders over his objections.

The Majority engages in the same understandable and laudable error as the trial court in its consideration and application of *In re C.J.C.*[1] Undeniably, the record shows the trial court's belief that Grandparents' actions have been positive.[2] The trial court and the Majority resolve Grandparents' ordered conservatorship and possession and access as in the best interest of the child. But in light of *In re C.J.C.*, I conclude (i) the record does not contain sufficient evidence to rebut the fit-parent presumption for Father and (ii) the trial court made no finding as to Father's unfitness. Both the trial court, and now the Majority, have merely decided that the nonparent would be a better choice as the child's custodian. Accordingly, I respectfully dissent from the decision not to request a response from Real Parties in Interest, and I respectfully dissent from the order denying mandamus relief.[3]

## I.    BACKGROUND

### A. Procedural History

On March 8, 2016, the trial court entered an "Order Establishing the Parent-Child Relationship," ("SAPCR Order") which designated Mother and Father as joint managing conservators of the child. This SAPCR Order designated Mother as the conservator with the exclusive right to designate the primary residence of the child.

---

[1] *See In re C.J.C.*, 603 S.W.3d 804, 820 (Tex. 2020).

[2] Judge Rakow states in the closing of the August 17, 2020 temporary orders hearing, "[Grandparents] did everything that they should have done and more, and my hats off to them for what they've done."

[3] We must request a response from real parties in interest before we may grant a mandamus petition. TEX. R. APP. P. 52.4 ("The court must not grant relief—other than temporary relief—before a response has been filed or requested by the court.").

The SAPCR Order granted Father standard possession of the child under the Texas Family Code. This SAPCR Order did not designate any rights or duties to the child's grandparents, and no grandparents are mentioned therein. This SAPCR Order had not been modified prior to the filing of the current proceeding.[4]

On May 6, 2020, Father filed his modification suit on the grounds that Mother "voluntarily relinquished the primary care and possession of the child to another person for at least six months." Father resides in Houston, Texas. Father petitioned to be appointed sole managing conservator with the right to designate the primary residence of the child.

On May 22, 2020, Grandparents filed a Petition in Intervention, which asserted standing under Texas Family Code § 102.003(a)(9).[5] Grandparents reside in the Rockwall area with the child. Grandparents petitioned to be appointed Joint Managing Conservators with the exclusive right to designate the primary residence of the Child or, alternatively, as sole managing conservators. Grandparents alleged Father and Mother had engaged in a history or pattern of child neglect.

---

[4] The parties, including Grandparents, sought to modify the SAPCR Order from 2016 to 2018, but those proceedings ended in a nonsuit granted April 27, 2018.

[5] Texas Family Code § 102.003(a)(9) provides: "An original suit may be filed at any time by . . . a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition." TEX. FAM. CODE ANN. § 102.003(a)(9). Grandparents alleged Mother and Father consented to voluntary relinquishment of the child to Grandparents.

## B. Temporary Orders Hearing

On August 17, 2020, the trial court held a temporary orders hearing. Father sought to be named temporary sole managing conservator of the child with the exclusive right to designate the primary residence of the child. Likewise, Grandparents sought to be named temporary joint managing conservators of the child with the exclusive right to designate the primary residence of the child.[6] Father objected to Grandparents' requests for conservatorship and possession and access.

At the conclusion of the hearing, District Judge David Rakow orally rendered temporary orders:

> [W]hat I will do is I will name [the grandparents] as temporary joint managing conservators with the mother and father. The mother stipulated, and I'll agree to her stipulation that she'll have no unsupervised visitation with the child except for in her parents' presence. And then I will give [Father] first, third, and fifth weekends beginning at the time school lets out, if he wants to come up here earlier or as late as 6:00. I'll leave that to work out and then have to return the child by 6:00 p.m. on Sunday.

The trial court ordered Father to submit to drug testing and agreed to revisit temporary orders after drug testing. The trial court did not otherwise enter findings of fact or conclusions of law.

On October 6, 2020—after (i) Father's motion to reconsider and (ii) receipt of two sets of clean drug testing results from Father—the trial court entered written

---

[6] Mother joined her parents' request to name the child's maternal grandparents as temporary joint managing conservators with the right to determine the primary residence of the child.

temporary orders, which designated Mother, Father, and Grandparents as joint managing conservators ("October Temporary Orders"). These October Temporary Orders granted Father the exclusive right to designate the primary residence of the child. These October Temporary Orders granted Mother supervised possession—under Grandparents' supervision—and granted Grandparents standard periods of possession of the child.[7] This mandamus followed.

## I.  ISSUES RAISED ON MANDAMUS

Father raises the following issues in his petition for writ of mandamus:

1.  Whether Respondent abused his discretion by appointing Grandparents as nonparent managing conservators and awarding Grandparents possession of and access to the child in violation of Father's constitutional rights under *Troxel*, *In re C.J.C.*, and the fit-parent presumption.

2.  Whether Respondent abused his discretion by appointing Mother as a temporary joint managing conservator when Mother admitted to being an unfit parent and unable to care for Child.

## II.  AVAILABILITY OF MANDAMUS REVIEW

To be entitled to the extraordinary relief of a writ of mandamus, relator must show that the trial court clearly abused its discretion and that he has no adequate remedy by appeal. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A trial court has no discretion in determining what

---

[7] The Majority concludes that these issues are "moot." However, the record shows that Grandparents continue to enjoy conservatorship and possession and access of the child over Father's objections. Those Grandparents' conservatorship and possession and access orders were, as I discuss hereunder, entered as an abuse of discretion.

the law is or in applying the law to the facts. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). Thus, a clear failure by the court to correctly analyze or apply the law will constitute an abuse of discretion. *Id.* This is true even when the law is unsettled. *Huie v. DeShazo*, 922 S.W.2d 920, 927–28 (Tex. 1996) (orig. proceeding). As for assessing the adequacy of an appellate remedy, this Court balances the benefits of mandamus review against the detriments. *In re Essex Ins. Co.*, 450 S.W.3d 524, 528 (Tex. 2014) (orig. proceeding) (per curiam). I agree with and join the Majority's conclusion that Father has no adequate remedy by appeal.

### III.  CLEAR ABUSE OF DISCRETION

### A. Fit-Parent Presumption

"The best interest of the child shall always be the primary consideration of the court in determining issues of conservatorship and possession of and access to the child." FAM. § 153.002. In 1995, the Texas Legislature added a statutory parental presumption applicable to original custody determinations:

> [U]nless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child.

FAM. § 153.131(a). This is often referred to as the "fit-parent presumption."[8] A fit parent "adequately cares for his or her children." *In re C.J.C.*, 603 S.W.3d at 814.

---

[8] *See In re C.J.C.*, 603 S.W.3d at 812.

(citing *Troxel v. Granville*, 530 U.S. 57, 68 (2000)). The court can consider each party's present fitness to care for the child, including whether either party has a drug or alcohol problem. *See* FAM. § 153.134(a)(7); *see also*, *e.g.*, *Strong v. Strong*, 350 S.W.3d 759, 766–68 (Tex. App.—Dallas 2011, pet. denied) (affirming judgment in which Mother was designated conservator with the exclusive right to determine the primary residence of the child despite evidence of mother's prior drug use and in light of evidence that "Mother had successfully battled her drug problem"). The fit-parent presumption is applied to limit a court's ability to interfere with the child-rearing decisions made by a parent who is adequately caring for his or her child. *See In re Derzapf*, 219 S.W.3d 327, 333 (Tex. 2007) (citing *Troxel*, 530 U.S. at 72–73).[9]

---

A majority of the *Troxel* Court found protection for this fundamental right—"perhaps the oldest of the fundamental liberty interests recognized by this Court"—within the Fourteenth Amendment. The parties in this case do not disavow that protection. And the justices in *Troxel* who might not root this right in substantive-due-process jurisprudence nevertheless similarly recognized a "fundamental right of parents to direct the upbringing of their children."

Texas jurisprudence underscores this fundamental right, and we too recognize that it gives rise to a "legal presumption" that it is in a child's best interest to be raised by his or her parents. Although the best interest of the child is the paramount issue in a custody determination, "[t]he presumption is that the best interest of the children" is served "by awarding them" to a parent. Thus, the fit-parent presumption is "deeply embedded in Texas law" as part of the determination of a child's best interest.

*In re C.J.C.*, 603 S.W.3d at 812 (internal footnotes omitted).

[9] *See also In re Mays–Hooper*, 189 S.W.3d 777, 778 (Tex. 2006) ("[S]o long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family." (quoting *Troxel*, 530 U.S. at 68)).

In order to overcome the fit-parent presumption, the evidence must do more than merely raise a suspicion or speculation of possible harm. *In re J.R.*, No. 05-19-00904-CV, 2020 WL 219315, at *4 (Tex. App.—Dallas Jan. 15, 2020, no pet.) (mem. op.) (citing *In re B.B.M.*, 291 S.W.3d 463, 467 (Tex. App.—Dallas 2009, pet. denied)). The burden to overcome the fit-parent presumption is not satisfied by merely showing the nonparent would be a better choice as custodian of the child. *Id.* (citing *In re B.B.M.*, 291 S.W.3d at 467).

In *In re C.J.C.*, the Texas Supreme Court held that the fit-parent presumption applies to nonparent suits to modify a conservatorship order that appoints a parent as a managing conservator.[10] *In re C.J.C.*, 603 S.W.3d at 820 (in a modification proceeding, the trial court abused its discretion in ordering—over a parent's objection—that a nonparent be named the child's possessory conservator with rights and possession of the child). "A court must apply the presumption that a fit parent—not the court—determines the best interest of the child *in any proceeding* in which a nonparent seeks conservatorship or access over the objection of a child''s fit parent." *Id.* at 817 (emphasis added). However, *In re C.J.C.* does not give us guidance as to the *degree* of evidence necessary to overcome the fit-parent presumption when a nonparent—who (i) has exercised primary possession of the child and (ii) acted in a parent-like role (iii) after the parent with primary conservatorship voluntarily

---

[10] "When a nonparent requests conservatorship or possession of a child, the child's best interest is embedded with the presumption that it is the fit parent—not a court—who makes the determination whether to allow that request." *In re C.J.C.*, 603 S.W.3d at 820.

relinquished rights to the child—seeks an order of conservatorship or possession and access of a child. Nevertheless, the existence of the fit-parent presumption necessarily requires that *some* evidence that a parent is not fit must be offered to rebut it. Here, the trial court's orders and implied findings confirm that Father is a fit parent.

### B. Temporary Orders Regarding Grandparents

The record shows Father objected to Grandparents' requests for conservatorship and possession and access. Despite Father's objection, the trial court entered temporary orders conferring conservatorship and possession and access rights to Grandparents. The Texas Supreme Court has made clear that there must be evidence or a finding rebutting the fit-parent presumption that Father acts in the child's best interest. *See In re C.J.C.*, 603 S.W.3d at 820. If there is no such evidence or finding rebutting the fit-parent presumption, the trial court abused its discretion. *See id.*

Mother and Grandparents did not challenge Father's present fitness as a parent. The record contains significant evidence that Grandparents have cared for the child from her birth to the commencement of the current proceeding. Indeed, the record shows that Grandparents exercised possession and access to the child with Mother's consent. However, Grandparents' adequate care of the child in the past does not serve to rebut the fit–parent presumption that applies to Father—such evidence does not show that Father's "appointment would significantly impair the

child's physical health or emotional development." *See* FAM. § 153.131(a); *In re C.J.C.*, 603 S.W.3d at 816, 820.

Furthermore, although it is undisputed that Mother voluntarily relinquished possession, care, custody, and control of the child to Grandparents, there is no evidence that Father voluntarily relinquished possession, care, custody, and control of the child. In alleging Mother's voluntary relinquishment, Grandparents claim that Father "consented" to Grandparents' exercising possession, care, custody, and control over the child. In discussing that "Mother chose Grandparents' home as the child's residence and relinquished significant parental duties to them," the Majority concludes "Father acquiesced in this relinquishment for most of the child's life."

Voluntary relinquishment generally requires an affirmative act from the parent relinquishing possession, care, custody, or control. *See, e.g.*, *Chenault v. Banks*, 296 S.W.3d 186, 191 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (in a suit to confirm arrearages, mother did not affirmatively agree to relinquish possession and control of son to father simply by agreeing to allow son to attend boarding school); *In re M.P.M.*, 161 S.W.3d 650, 655 (Tex. App.—San Antonio 2005, no pet.) (assuming without deciding that there must be an affirmative agreement; mother affirmatively agreed to relinquish possession when she (i) shut door in child's face, (ii) told child she should live with father, (iii) did not request child's return, and (iv) returned both children to father after the children visited mother); *Norman v. Norman*, 683 S.W.2d 548, 550 (Tex. App.—Fort Worth 1985)

("[W]e note that 'relinquish' means to abandon, to give up, to surrender, or to renounce. Black's Law Dictionary, 1161 (5th ed. 1979). To relinquish a child requires a greater amount of affirmative action than to tolerate or acquiesce in that child's change of residence."), *judgment rev'd, appeal dismissed*, 692 S.W.2d 655 (Tex. 1985).

Here, under the SAPCR Order, Mother held the exclusive right to determine the primary residence of the child until the October Temporary Orders. The record contains no affirmative action of voluntary relinquishment from Father. How could Father acquiesce to relinquishment of a right he did not previously hold? For Father to change the SAPCR Order, he would be required to obtain a modification. Thus, under the Majority's view, was Father required to obtain such modification to avoid "acquiescing" to relinquishment? Was Father required to obtain an earlier modification?

Grandmother agreed Father previously exercised possession in accordance with the orders.[11] The record shows Father exercised his summer periods of possession with the child.[12] Furthermore, as of the filing of the suit, Father (i) sought

_____

[11] The Majority states "Father's first unsupervised extended possession occurred when the child was approximately 4 years old." However, there has never been an order for "supervised possession" for Father's periods of possession. The SAPCR Order does not include such conditions on Father's standard possession orders. Father agreed to exercise possession with Grandparents, in lieu of the SAPCR Order. Does the Majority want to frame these agreed periods of possession against Father?

[12] The trial court stated "[Grandparents] didn't cooperate with [Father] on when his summer possession would begin, and we had difficulties. I brought y'all in and said it's going to happen, let's do the date, and y'all refused to come to a date."

–11–

and obtained an issuance of habeas corpus, which directed Grandparents to bring the child for a hearing to determine whether the child should be returned to Father, and (ii) sought and obtained a temporary restraining order excluding Mother from possession.[13]

There are no findings in the record—either explicit or implied—to indicate that Father is unfit. Instead, the trial court's temporary orders suggest that Father is a fit parent. The trial court's oral rendition gave Father unsupervised possession of the child on

> first, third, and fifth weekends beginning at the time school lets out, if he wants to come up here [from Houston] earlier or as late as 6:00 p.m. I'll leave that to work out and then have to return the child by 6:00 p.m. on Sunday.

Subsequently, the October Temporary Orders—entered a mere fifty days after the August 17, 2020 temporary orders hearing—designated Father as a joint managing conservator with the exclusive right to designate the child's primary residence.[14] The record shows the trial court has not—at any point—entered orders that (i) reduced Father's conservatorship below joint-managing conservatorship, (ii)

---

[13] The August 17, 2020 hearing occurred as a result of Father's temporary restraining order and according extension, thereafter. Although not addressed in evidence, Father's motions to reconsider and stay the rendered orders from August 17, 2020, allege that "[t]he child has been in the primary possession of [Father] continuously since June 12, 2020."

[14] The record shows that the only substantive evidence that the trial court received between the August temporary orders hearing and the October temporary orders was the two sets of clean drug tests from Father.

reduced Father's possession below standard possession,[15] or (iii) required Father to submit to supervised periods of possession. There are no findings in the record to rebut the fit-parent presumption as applied to Father.

In the context of the trial court's orders, the contrary position—that the trial court made a finding that Father was an unfit parent—is not reasonable because such a determination would necessitate orders regarding Father that (i) reduce his conservatorship rights and duties, (ii) change his conservatorship designation from joint-managing conservatorship to possessory conservatorship, (iii) reduce his periods of possession and access, or (iv) add conditions on possession and access— such as supervised periods of possession.[16] Here, the trial court entered no orders of that kind and instead granted Father the exclusive right to determine the primary residence of the child—*increasing* his periods of possession and access.

Therefore, because neither evidence nor findings exist to rebut the fit-parent presumption as applied to Father, the trial court clearly abused its discretion in entering orders over Father's objection, which (i) designated Grandparents

---

[15] The Texas Family Code provides a standard possession order. FAM. §§ 153.3101-.317. "In a suit, there is a rebuttable presumption that the standard possession order . . . provides reasonable minimum possession of a child for a parent named as a possessory conservator or joint managing conservator and is in the best interest of the child." FAM. § 153.252.

[16] How may we conclude that a trial court determined a parent unfit only to maintain and then increase that parent's conservatorship rights and duties and possession and access? If there is a determination that a parent is not fit, must not orders that in some way reduce the parent's conservatorship rights and duties or possession and access follow?

–13–

conservatorship rights to the child and (ii) awarded Grandparents possession and access of the child. *In re C.J.C.*, 603 S.W.3d at 820.

### C. Temporary Orders Regarding Mother

Based on my discussion of the first issue, I pretermit discussion of the second issue except to observe that the trial court's temporary orders regarding Mother—which add supervisory conditions to and *reduce* her periods of possession—suggest an implied finding that Mother was unfit.[17]

## IV. CONCLUSION

It is evident from the record that Grandparents have played a substantial role in caring and providing for the child. But, I maintain that the trial court failed to follow the requirements of *In re C.J.C.* in entering conservatorship and possession and access orders to Grandparents. In my view, the record before us is not sufficient to overcome the fit-parent presumption that Father enjoys. Furthermore, the trial court did not make any finding—either explicit or implied—as to Father's unfitness as a parent. Since Father objected, the trial court abused its discretion in ordering conservatorship and possession and access of the child to Grandparents. For those reasons, I respectfully dissent from our decision not to request a response from Real

---

[17] Mother testified that she was not fit to adequately care for the child, was incapable of ensuring the child's personal welfare, and was not capable of supporting or guiding the child. However, is such evidence sufficient to find her unfit? What quantum of evidence is required? Again, *In re C.J.C.* does not give us guidance as to the *degree* of such evidence.

Parties in Interest, and I respectfully dissent from the order denying mandamus relief.

200983f.p05

/Bill Pedersen, III//
BILL PEDERSEN, III
JUSTICE